KNOLL, Justice,
dissents.
1T Respectfully I dissent from the majority’s affirmation of the appellate court’s decision that the appointing authority lacked reasonable suspicion to require plaintiff, an employee of the Lafayette City Police Department, to undergo testing for prohibited substances. The majority acknowledges that the Board and the Government correctly pointed out that the reasons outlined in PPM 128-1 § 14 are not exclusive. To require an officer to undergo testing requires reasonable suspicion the officer uses and/or abuses and/or possesses drugs, based upon specific objective facts and reasonable inferences drawn from those facts.
As a premise, we recognize that it is reasonable for a governmental employer to order an employee to submit to a drug test on the basis of individualized suspicion in certain circumstances. George v. Dep’t of Fire, 98-2421, p. 5 (La. Ct.App. 4 Cir. 5/17/94), 637 So.2d 1097, 1101; Banks v. Dep’t of Public Safety and Corr., 598 So.2d 515, 518 (La. Ct.App. 1 Cir.1992). In the present matter, the record shows that on June 15, 2005, when Lafayette Chief of Police Randy Hundley ordered Richard to take a reasonable suspicion drug test, he knew that Richard, who had never worked in narcotics, contacted K-9 Agent Brent Taylor while Taylor and other officers were conducting the raid on the Segal/Cor-mier apartment which contained drugs. Also known to the Chief at the time he ordered the test was the fact that Richard received 12a phone call from Marc Cormier while the raid was taking place; this prompted Richard to make his call to Taylor. These circumstances of Richard’s engagement with individuals later arrested for illegal drugs, his receipt of a phone call from the target of the investigation while the apartment was being raided, and his phone call to one of the officers during the raid constitute sufficient reasonable suspicion for a drug test, in my view.
An investigatory stop based upon reasonable suspicion requires only “some minimal level of objective justification”. United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting Immigration & Naturalization *525 Serv. v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)); State v. Walker, 06-1045, p. 6 (La.4/11/07), 953 So.2d 786, 790. Reviewing courts must look to the “totality of the circumstances” of each case in determining whether the officers possessed the requisite reasonable suspicion. United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002) (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)); State v. Temple, 02-1895, p. 5 (La.9/9/03), 854 So.2d 856, 860. The “reasonable suspicion” threshold is a very low one; it does not rise to the level of probable cause but only requires the articulation of something more than an “inchoate and unparticular-ized suspicion or ‘hunch’ ”. Sokolow, 490 U.S. at 7, 109 S.Ct. at 1585 (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 899 (1968)); PPM 123-1, § 14.2. Chief Hundley possessed more than mere speculation or a hunch; the totality of circumstances known to him when he ordered the test constituted reasonable suspicion.
The majority additionally errs in finding support for its decision from the Chiefs failure to coordinate the test with the Substance Abuse Program Manager in 13accordance with PPM 123-1 § 14.2. The majority finds the language in Section 14.2 to be mandatory, but fails to provide any analysis to support this conclusion. Statutes may be classified generally as either mandatory or directory. Sanders v. Dep’t of Health and Human Resources, 388 So.2d 768, 770 (La.1980). If mandatory, they prescribe, in addition to requiring the doing of the thing specified, the result to follow, ie., a penalty, if the required action is not taken. Marks v. New Orleans Police Dep’t, 06-0575, p. 10 (La.11/29/06), 943 So.2d 1028, 1035; Sanders, 388 So.2d at 770. Provisions designed to secure order, system, and dispatch by guiding the discharge of duties are usually construed as directory even if worded in the imperative. Marks, 06-0575 at p. 11, 943 So.2d at 1035; Sanders, 388 So.2d at 770. Pursuant to the jurisprudence of this Court and sound statutory construction principles, I find the statutory language to be directory rather than mandatory. Directory meaning is the proper construction to give in cases involving prospective action of government officials if the law’s purpose is the protection of the government by guidance of its officials rather than the granting of rights to private citizens affected. Sanders, 388 So.2d at 771. Thus, it is erroneous to conclude the drug testing of this officer was invalid for the Chiefs failure to discuss and coordinate the test with the Substance Abuse Program Manager.
The majority additionally finds support for reversing the decision to terminate Mr. Richard because Mr. Richard was contacted by the MRO’s son and not the MRO. The majority does not demonstrate what, if any, provision this violates. The MRO’s duties are to interpret, evaluate, and monitor the drug testing program, receiving all results from the laboratory and reviewing those results prior to transmission of those results to the City’s administrators and/or the Substance Abuse Program Manager. There is no allegation by plaintiff that the MRO failed to comply with any of these | requirements.
For these reasons, I find the appellate court erred in reversing the district court’s judgment affirming the Board’s decision to terminate Mr. Richard and this Court errs in affirming that decision.