STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-719


LAKE CHARLES POLICE OFFICERS' ASSOCIATION
LOCAL 830 AFL-CIO AND CRAIG DESORMEAUX,
INDIVIDUALLY AND AS PRESIDENT OF THE LOCAL 830

VERSUS

THE HONORABLE RANDALL EDMUND ROACH
AND THE CITY OF LAKE CHARLES


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2015-1786
HONORABLE RONALD F. WARE, DISTRICT JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of Sylvia R. Cooks, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.


AFFIRMED.

**Edward J. Fonti**
**Gregory W. Belfour**
**Jones, Tête, Fonti & Belfour, LLP**
**Post Office Box 1930**
**Lake Charles, Louisiana 70602**
**(337) 439-8315**
**Counsel for Defendants/Appellants:**
   **Randall Edmund Roach**, **Mayor of the City of Lake Charles**
   **The City of Lake Charles**

**Billy E. Loftin, Jr.**
**Brian M. Bradford**
**Loftin, Cain & LeBlanc, LLC**
**113 Dr. Michael DeBakey Drive**
**Lake Charles, Louisiana 70601**
**(337) 310-4300**
**Counsel for Defendants/Appellants:**
   **Randall Edmund Roach**, **Mayor of the City of Lake Charles**
   **The City of Lake Charles**

**Mayor Randall Edmund Roach**
**In Proper Person**
**326 Pujo Street**
**Lake Charles, Louisiana 70601**
**(337) 491-1201**
**Defendant/Appellant**

**Walter M. Sanchez**
**The Sanchez Law Firm, L.L.C.**
**1200 Ryan Street**
**Lake Charles, Louisiana 70601**
**(337) 433-4405**
**Counsel for Plaintiffs/Appellees:**
   **Lake Charles Police Officers' Association Local 830 AFL-CIO**
   **Craig Desormeaux, Individually and as President of the Local 830**

**KEATY, Judge.**

Defendants, the Honorable Randall Edmund Roach, in his capacity as Mayor of the City of Lake Charles, and the City of Lake Charles (collectively "the City"), appeal the trial court's granting of a declaratory judgment in favor of Plaintiffs, the Lake Charles Police Officers' Association Local 830 AFL-CIO and Craig Desormeaux, individually and as President of the Local 830 (collectively "the Local 830"). For the following reasons, the trial court's judgment is affirmed.

## FACTS AND PROCEDURAL HISTORY

The Local 830 is a labor organization with approximately 160 members (Local 830 members). All Local 830 members are classified civil service employees and constitute approximately 80% of the Lake Charles Police Department (LCPD). Classified civil service employees are restricted from certain political activities pursuant to La.R.S. 33:2504. The penalty imposed for violating the statutory restrictions includes mandatory discharge and a six-year ineligibility period for seeking employment or public office in the classified service. La.R.S. 33:2504(B) and (C).

Given those restrictions, the Local 830 consulted with the Lake Charles City Service Board (the Board) and proposed a rule detailing the circumstances wherein Local 830 members could lawfully endorse political candidates. The Board repeatedly deferred action on the proposed rule. As a result, the Local 830 filed the instant Petition for Declaratory Judgment, asking for a declaration allowing it to publicly endorse, support, and "make public political statements on behalf of a candidate seeking to be elected to public office, after a vote of the membership regarding the issue and have its officers or spokesperson make such public endorsements or public statements on behalf of the Local." The trial court ruled in

its favor and incorporated the procedure proposed by the Local 830, in its pretrial memorandum, for the consideration of such endorsements. The City appealed.

On appeal, the City asserts the following assignments of error:

1.

The trial court erred in concluding that the Lake Charles Police Officers' Association Local 830 which is comprised solely of classified civil service Lake Charles police employees, may publicly endorse candidates for elected public offices, and in specifying the procedure to be followed in making and announcing an endorsement.

2.

The trial court erred in permitting classified civil service police employees to make public statements on behalf of Local 830 endorsing candidates for elected public offices.

3.

The trial court erred in not attributing the political activities of the Lake Charles Police Officers' Association Local 830 to its members.

**DISCUSSION**

**I.      Declaratory Judgment**

The Local 830 requested a declaratory judgment addressing whether it could publicly support a candidate running for public office despite the restrictions imposed upon classified civil service employees pursuant to La.R.S. 33:2504. In that regard, "[c]ourts of record within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed." La.Code Civ.P. art. 1871. Further, La.Code Civ.P. art. 1872 provides that:

A person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or

2

franchise and obtain a declaration of rights, status, or other legal relations thereunder.

In *Campbell v. Evangeline Parish Police Jury*, 14-1301, pp. 3-4 (La.App. 3 Cir. 5/6/15), 164 So.3d 408, 412, *writ denied*, 15-1067 (La. 9/11/15), 176 So.3d 1043, the supreme court further elaborated that:

> [T]he function of a declaratory judgment is to establish the rights of the parties or to express the court's opinion on a question of law without ordering any relief. *MAPP Constr., LLC v. Amerisure Mut. Ins. Co.*, 13-1074 (La.App. 1 Cir. 3/24/14), 143 So.3d 520. "Trial courts are vested with wide discretion in deciding whether or not to grant or refuse declaratory relief." *In re Interment of LoCicero*, 05-1051, p. 4 (La.App. 4 Cir. 5/31/06), 933 So.2d 883, 886. However, where the judgment would terminate an uncertainty or controversy which gave rise to the proceeding, the trial court must render a declaratory judgment. *Id. See also* La.Code Civ.P. art. 1876. Accordingly, the appellate court is limited to a determination of whether the trial court abused its discretion in its grant of or refusal to render a declaratory judgment. *Id.*
>
> Although the trial court's determination about whether to issue a declaratory judgment is subject to the abuse of discretion standard, the judgment itself is still subject to the appropriate standard of review—questions of law are reviewed de novo and questions of fact are subject to the manifest error/clearly wrong standard of review. *See Ranger Ins. Co. v. Shop Rite, Inc.*, 05-452 (La.App. 5 Cir. 1/17/06), 921 So.2d 1040.

The interpretation of statutes is a question of law which is reviewed by the appellate courts under the de novo standard of review. *Silver Dollar Liquor, Inc. v. Red River Parish Police Jury*, 10-2776 (La. 9/7/11), 74 So.3d 641.

## II. ASSIGNMENTS OF ERROR

In its first assignment of error, the City contends that the trial court erred in concluding that the Local 830, which is comprised of LCPD classified civil service employees, can publicly endorse candidates for elected public offices. The City asserts that the trial court erred by specifying the procedure to be followed when making an endorsement. In its second assignment of error, the City states that the

3

trial court erred in allowing LCPD employees to make public statements on behalf of the Local 830 by endorsing candidates for elected public offices. In its third assignment of error, the City argues that the trial court erred in not attributing the political activities of the Local 830 to its individual members. Given the overlapping assignments of error, the issue to be decided is whether the prohibition against political activity pursuant to La.R.S. 33:2504 is limited to civil service employees, or whether that prohibition extends to a labor organization such as the Local 830, where its members are classified civil service employees.

In that regard, at the January 26, 2016 trial on the merits of the declaratory judgment, Mr. Desormeaux's testimony indicates that he was both a lieutenant employed by the LCPD and the president of the Local 830. He testified regarding the procedure the Local 830 would utilize endorsing a political candidate.[1] Mr. Desormeaux stated that Local 830 members would attend a members-only meeting to discuss a possible political endorsement. He indicated that the meeting's occurrence would be disseminated to members through e-mail correspondence and by posting a notice on the bulletin board located in the police department offices currently used by the Local 830 for such notices. Mr. Desormeaux noted that only Local 830 members could attend the meeting, which would be closed to the public. He testified that all candidates running for a certain elected position would be invited to speak individually at the Local 830 meetings. Mr. Desormeaux stated that the Local 830's ballot elections would remain open for nine calendar days so that its members have "ample opportunity to

---

[1] In support, Mr. Desormeaux noted a similar case, *Shreveport Police Officers Association Local #75 ALF-CIO and Michael Carter, Individually and as President of the Shreveport Police Officers Association Local #75 AFL-CIO v. Honorable Cedric Glover, Appointing Authority, and City of Shreveport*, Docket Number 505,140B, First Judicial District Court, Caddo Parish. He offered into evidence the trial court's Reasons for Judgment as an exhibit at trial in this matter.

come in over that nine day period and cast their ballot." He revealed that the written, secret ballots would be collected in a ballot box that would remain in the patrol secretary's office. Mr. Desormeaux advised that the ballots would be counted by a committee composed of three Local 830 members, none of whom could be serving on the executive board at that time. He stated that after counting the ballots, the committee would report the results to the executive board. Mr. Desormeaux testified that the endorsement would occur only upon a majority of the votes cast in favor of a certain candidate. The endorsement would be disseminated to the public by a Local 830 member according to Mr. Desormeaux. He advised that the Local 830 spokesperson could not wear police attire while informing the public of the endorsement.

There are a couple of appellate court opinions and an Attorney General opinion interpreting the prohibitions against political activities imposed upon civil service employees, which are summarized as follows. In *Cannatella v. Department of Civil Service*, 592 So.2d 1374 (La.App. 4 Cir.), *writ denied*, 596 So.2d 215 (La.1992), a police officer, who was both a classified employee and the president of the Police Association of New Orleans (PANO), endorsed a mayoral candidate on behalf of PANO. The Civil Service Commission suspended the officer, Sergeant Cannatella, based upon his alleged violations of La.Const. art. X, § 9(A), which provides that "[n]o . . . officer or employee in the classified service shall participate or engage in political activity[.]" *Id.* Political activity is defined in La.Const. art. X, § 9(C) as "an effort to support or oppose the election of a candidate for political office or to support a particular political party in an election." *Id.* Sergeant Cannatella also allegedly violated City Civil Service Rule XIV, which provided that "'[c]onduct prohibited to classified employees . . . by

5

this Rule includes any public political statement, whether verbal or written, any public political overture or demonstration or any connection with public representation or reproduction having political significance[.]'" *Id*. at 1376. The fourth circuit noted that private expressions of opinion by classified civil service employees were specifically exempted. *Id*.

The fourth circuit reversed the Civil Service Commission's ruling, finding that the prohibition found in La.Const. art. X, § 9(A) and City Civil Service Rule XIV "is exclusively limited to . . . classified civil service employees and officers." *Cannatella*, 592 So.2d at 1376. It stated that the prohibition "does not extend to a labor organization such as PANO, or its spokesperson, merely because its members are classified civil service employees." *Id*. The fourth circuit explained that:

> PANO is an entity which is distinct and distinguishable from its members. An endorsement of a candidate for elective office by PANO through its president is not a personal endorsement of that candidate by Sgt. Cannatella. The stipulation clearly shows that Sgt. Cannatella publicly expressed *PANO's* endorsement for mayor, not his personal choice. Any statement made by Sgt. Cannatella during a PANO meeting is a private expression of his opinion which is specifically exempt from the constitutional prohibition. *Civil Service Commission v. PANO*, 90-C-0769, *writ granted* (La.App. 4th Cir.1990).

*Id*.

*Cannatella*, 592 So.2d 1374, was referenced in a 1999 Attorney General Opinion interpreting La.R.S. 33:2504, which states:

> 1) The endorsement of a political candidate by a union is not proscribed by any law.
>
> 2) The endorsement of a political candidate by a union is not a personal endorsement by its spokesperson.
>
> 3) Any statement made by a civil service employee during a union meeting is a private expression of the employee's opinion and is specifically exempt from constitutional prohibition.

La. Atty. Gen. Op. No. 98-464 (La.A.G.), 1999 WL 106945.

Thereafter in 2001, the fifth circuit in *Kenner Police Department v. Kenner Municipal Fire & Police Civil Service Board*, 00-1080, 00-1081 (La.App. 5 Cir. 1/23/01), 783 So.2d 392, *writ denied*, 01-487 (La. 4/20/01), 790 So.2d 635, affirmed the trial court's judgment terminating five police officers for violating La.R.S. 33:2504. In *Kenner*, 783 So.2d 392, the five plaintiffs were both former police officers and members of the police union, the Police Association of the City of Kenner (PACK). The plaintiffs also "made up the entire executive board of PACK." *Id.* at 394. The plaintiffs, acting as PACK's executive board, voted to endorse and support a certain candidate for political office without obtaining the entire union's approval before making the decision. When the union members were notified of the executive board's action, many objected. Despite the objections, the plaintiffs conducted a meeting, comprised only of the executive board, which resulted in a financial contribution to the political candidate's campaign. Following a formal investigation and citing La.R.S. 33:2504, the appointing authority terminated them. The Civil Service Board affirmed the action of the appointing authority both on the political endorsement and on the fact that executive board members had financially contributed to the candidate. The trial court affirmed the Civil Service Board's finding, and an appeal ensued. In affirming the trial court's judgment by finding that a violation of La.R.S. 33:2504 occurred, the fifth circuit relied upon the following facts: (1) with respect to the public endorsement, there was no formal vote of the union membership to either approve or disapprove of the endorsement; (2) the campaign contribution issue was not brought before any other union members since only the same five members of

7

the executive board voted in favor of the issue; and (3) multiple union members objected to the executive board's action.

The instant matter is different from *Kenner*, 783 So.2d 392, in that every Local 830 member is given the opportunity to vote for any candidate they desire. Although given the opportunity, Local 830 members are not required to vote. All votes cast are confidential, and a majority is required before an endorsement is made. The votes cast are counted by three Local 830 members who are not serving on its executive board. Additionally, and unlike *Kenner*, 783 So.2d 392, the Local 830 is only seeking to politically endorse, and not financially support, a candidate.

To the extent that the law appears unsettled between the circuit courts, we have found no jurisprudence wherein the supreme court or the third circuit has addressed this precise issue. Therefore, we conclude that *Cannatella*, 592 So.2d 1374, and the Louisiana Attorney General Opinion cited above constitutes persuasive authority for the trial court's interpretation and application of La.R.S. 33:2504. In accordance therewith, the Local 830 is an entity which is distinct and distinguishable from its members. *See Cannatella*, 592 So.2d 1374. As such, an endorsement of a political candidate by the Local 830 through its president, Mr. Desormeaux, is not a personal endorsement of that candidate by him.

In brief, the City relies on *Glazer v. Commission on Ethics for Public Employees*, 431 So.2d 752 (La.1983), for the proposition that political activities of the Local 830 are attributable to its members. *Glazer* involved a member of the State Mineral Board. The board's duties included the administration of the state's proprietary interest in minerals and the authority to lease state lands for development of minerals. The board member was also the president, chief executive officer, and sole stockholder of a steel company that sold products on a

8

non-bid negotiated basis to mineral lessees of state-owned lands. The supreme court held that the public servant's company's receipt of private compensation from the state's mineral lessees, when the mineral board had direct control over the leases involved, presented the danger of an undue influence on the public servant's official dealings with the mineral lessees. As such, the supreme court found that the board member violated La.R.S. 42:1111(C)(2)(d), which governed the ethical standards established for public servants.

*Glazer*, 431 So.2d 752, is distinguishable from the instant matter since *Glazer* involved one public official, whereas the Local 830 is a labor organization with many members and is distinct and distinguishable from its members. The public official in *Glazer* used his wholly-owned corporation to do what he was prohibited from doing in his individual capacity, in an attempt to avoid an unlawful conflict of interest. It is apparent that the individual board member is the real beneficiary given the pecuniary benefit he would receive. On the other hand, in this matter, the Local 830 does not seek any pecuniary benefit that can be attributed to any of its members.

Finally, under the rationale expressed by the United States Supreme Court in *Citizens United v. Federal Election Commission*, 558 U.S. 310, 130 S.Ct. 876 (2010), unions and corporations are entitled to the First Amendment protection guaranteeing freedom of expression, which the Supreme Court ruled applied to spending money in elections as part of free speech. We find that if that form of speech is protected for such entities, then actual speech is protected and must not be stifled. Importantly, the Supreme Court noted that, "Speech is an essential mechanism of democracy, for it is the means to hold officials accountable to the people." *Id*. at 898. "The right of citizens to inquire, to hear, to speak, and to use

9

information to reach consensus is a precondition to enlightened self-government and a necessary means to protect it." *Id*. "[P]olitical speech must prevail against laws that would suppress it, whether by design or inadvertence." *Id*. Laws burdening political speech, therefore, must be strictly scrutinized. *Id*.

The Supreme Court included unions and other associations as well as for-profit and non-profit corporations as "persons" covered by the First Amendment, by noting: "Corporations and other associations, like individuals, contribute to the 'discussion, debate, and the dissemination of information and ideas' that the First Amendment seeks to foster[.]" *Id*. at 900 (quoting *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 783, 98 S.Ct. 1407 (1978)). It rejected arguments that political speech on behalf of other associations or corporations should be treated differently via the First Amendment simply because they are not categorized as natural persons. *Citizens United*, 558 U.S. 310.

Based on the above, the trial court correctly interpreted La.R.S. 33:2504, and it did not abuse its discretion in granting the declaratory judgment. The City's assignments of error are without merit, and the declaratory judgment is affirmed.

## CONCLUSION

The trial court's granting of a declaratory judgment in favor of Plaintiffs, the Lake Charles Police Officers' Association Local 830 AFL-CIO and Craig Desormeaux, Individually and as President of the Local 830, is affirmed. All costs associated with this appeal are assessed to Defendants, the Honorable Randall Edmund Roach, in his capacity as Mayor of the City of Lake Charles, and the City of Lake Charles.

**AFFIRMED.**

10